IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILLY JOE TILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05CV28-SRW |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Billy Joe Tillman brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On January 22, 2003, plaintiff filed an application for disability insurance benefits. In his application, plaintiff claimed that he suffers from "bad nerves" which rendered him unable to work on June 1, 2002. He stopped working because he "could not stand to be around people & nervous & upset all the time." R. 54-55. Plaintiff indicated that he had not received medical treatment for the "illnesses, injuries or conditions" that limit his ability to work and, specifically, that he had never received medical treatment for emotional or mental

problems that limit his ability to work.  (R. 56).  Plaintiff further noted that he did not take any medications and had not had any medical tests for his conditions.  (R. 57).  He reported that he had completed 11th grade and that he attended special education classes for one year only in the early 1970s, explaining that he "was in one class in Junior High for emotional children & had to have extra help that year[.]" (R. 58).  Plaintiff stated, "I have always had a bad nerve problem.  My mother says I was born that way.  I stay nervous & upset & shake a lot. My problems got a lot worse when my wife & I divorced.  I have not been able to work since then."  (R. 58).

  In a subsequent interview, plaintiff added that he also suffers from "back trouble," and indicated that he has no mental condition that keeps him from working.  He stated that he does not like to be around crowds because his shaking embarrasses him.  (R. 63).  In a February 9, 2003 questionnaire, plaintiff responded that he takes "Goody body ache" and Advil every day.  He states that he "can't lift anything to[o] heavy" and "can't bend;" that he "was having back pain and pain in [his] hands often, but now it is on a regular basis;" and that back pain causes him to stop doing his usual activities after 30-45 minutes.  (R. 64-69). Plaintiff reports that he worked as a janitor at a hospital, janitorial business, manpower business and "building motors" business between October 1984 and August 1989 and between September 1994 and July 2002.  (R. 79).

  The limited medical evidence consists of a March 20, 2003 consultative neurological examination by Dr. William Watson (R. 110-111), a November 24, 2003 consultative psychological evaluation by Doug McKeown, Ph.D. (R. 121-27), records of four mental

health treatment appointments on February 5, February 17, March 4 and March 18, 2004 by providers at SpectraCare (Wiregrass Mental Health Board, Inc.)(R. 128-39).[1]

On February 18, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on May 7, 2004, in which he found that plaintiff suffers from severe impairments but retains the residual functional capacity to perform the full range of medium work and, thus, can perform his past relevant work as a janitor. The ALJ concluded, accordingly, that plaintiff is not disabled within the meaning of the Social Security Act. On November 12, 2004, the Appeals Council denied plaintiff's request for review and the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145.

---

[1] Physical therapy records from Southeast Alabama Medical Center for the period between August 1 and August 15, 1997 may have been omitted from the record before the ALJ. See Plaintiff's letter to Appeals Council (R. 147-48). Although plaintiff argued before the Appeals Council that this evidence required remand, plaintiff makes no argument regarding this evidence before this court.

3

Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ erred by failing to state with particularity the weight he gave the different medical opinions; (2) the ALJ erred by failing to make accurate findings regarding the demands of plaintiff's past relevant work; and (3) the ALJ erred by failing to specify which impairments he found to be severe.

Failure to make accurate findings regarding the demands of plaintiff's past relevant work. The ALJ rendered a step-four decision in this case, finding that plaintiff is able to perform his past relevant work. A step four decision may be based on a conclusion that the plaintiff "retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he . . . actually performed it." SSR 82-61. It may instead be based on a determination that "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Id. "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is usually performed

in the national economy." Id.

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. . . . [I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'"

Id. In this case, the ALJ chose to rely on a DOT description of the position of "janitor" as that job is performed in the national economy. The problem with the ALJ's analysis is that he chose a DOT classification for "janitor" which describes the duties and requirements of a semi-skilled position. See DOT Classification 382.664-010 (SVP 3)(cited in ALJ's decision at R. 24 )("Section 382.664.010 indicates the claimant's work as a janitor was performed at the medium level of exertion and the semiskilled level of ability."). There is no evidence of record that any of plaintiff's past relevant work was semi-skilled work[2] and, thus, the DOT classification chosen by the ALJ is not representative of the type of work performed previously by the plaintiff. See Thomas v. Apfel, 22 F. Supp.2d 996 (S.D. Iowa 1998)(noting that "[t]o determine what a typical job description is in the 'national economy,' an ALJ may take notice of job information in the DOT," but finding error because the job described by the DOT classification chosen by the ALJ "require[d] more vocational preparation than Plaintiff had undertaken" and, thus, "the job described by the DOT was not part of Plaintiff's past relevant work."); cf. Marshall v. Barnhart, 228 F. Supp. 2d 938 (S.D.

---

[2] It is possible that plaintiff acquired skills from the job in which he supervised another individual. However, the record regarding plaintiff's past relevant work is not sufficiently developed to permit this conclusion.

5

Iowa 2002)(ALJ's step four decision that plaintiff could return to her past relevant work as a "teacher's aide" as described in the DOT not supported by substantial evidence where, *inter alia*, plaintiff's previous work involved only "rocking babies" and not the myriad duties described in the DOT classification). Thus, the ALJ's determination that plaintiff could return to his past relevant work was erroneous as a matter of law and the decision of the Commissioner is due to be reversed.[3]

<u>Failure to state the weight given to medical opinions</u>. Plaintiff argues that the ALJ's failure to state with particularity the weight he gave to the different medical opinions of record warrants reversal. Plaintiff's argument relies, to a large extent, on his contention that the ALJ failed either to adopt or explain his rejection of the conclusions made by Carol M. Davis, the disability specialist and single decisionmaker ("SDM") as to plaintiff's residual functional capacity (Exhibit 4F) and her conclusion in the "Vocation Rationale Form" (Exhibit 10E) that plaintiff's RFC precludes the performance of his past relevant work as a janitor. (<u>See</u> Plaintiff's brief, p. 4).[4] The disability specialist's conclusion is not a medical opinion. Further, the hearing before the ALJ is *de novo*,[5] and the ALJ is not bound by the conclusions drawn by the disability specialist.

---

[3] The court does not intend to suggest that the ALJ cannot find, on remand, that plaintiff is capable of performing his past relevant work. On remand, the ALJ may support a step four decision by developing the record sufficiently to make a finding regarding the demands of plaintiff's work as he actually performed it, by taking testimony from a VE regarding the demands of plaintiff's past relevant work, or by selecting a DOT classification that corresponds with plaintiff's past work.

[4] The plaintiff, of course, does not suggest that the ALJ should give weight to the SDM's conclusion that plaintiff retains the residual functional capacity to perform jobs which exist in significant numbers in the national economy and that plaintiff is, thus, not disabled. (R. 91).

[5] <u>See</u> <u>Heckler v. Day</u>, 467 U.S. 104, 107 (1984).

Additionally, it is evident from the ALJ's decision that he fully credited the opinions of Dr. McKeown, the consultative psychologist, and the providers at SpectraCare. However, the Commissioner's consultative examiner, Dr. Watson, noted that plaintiff suffers from a tremor and that plaintiff would have difficulty handling objects because of this tremor.[6] While the ALJ may have had good reason for rejecting this limitation, he does not clearly state his reason in the decision. The ALJ's failure to discuss his reasons for rejecting this limitation in assessing plaintiff's RFC leaves the court with an inadequate basis for reviewing the ALJ's decision as to this issue.[7]

## CONCLUSION

The court agrees with the ALJ's observation that there is a "vast disparity between the claimant's subjective complaints and the medical evidence." (R. 19). Indeed, it is likely – absent substantial supplementation of the record – that the ultimate result in this case will remain unchanged after remand. However, the court cannot affirm a decision that does not set forth sufficient reasoning to permit a conclusion that the ALJ followed the proper legal analysis.[8] Accordingly, the decision of the Commissioner is due to be REVERSED, and this action REMANDED for further proceedings consistent with this opinion. A separate

---

[6] There is no contrary medical opinion.

[7] The same is true of Dr. Watson's rather vague assessment that plaintiff "would have difficulty lifting and carrying" although, as the Commissioner argues, it appears that the ALJ may have taken this limitation into account by finding plaintiff to be limited to work at the medium exertional level.

[8] In view of the court's conclusion that remand is otherwise required, the court does not discuss plaintiff's argument that the ALJ erred by failing to specify which impairments he found to be "severe." However, the court notes that the ALJ's failure to do so needlessly complicates judicial review of his decision.

judgment will be entered.

    Done, this 12th day of June, 2006.

                                  /s/ Susan Russ Walker
                                  SUSAN RUSS WALKER
                                  UNITED STATES MAGISTRATE JUDGE